## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **V. M. P.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 5:21-cv-43-CHW** |
| | : | |
| **COMMISSIONER OF** | : | **Social Security Appeal** |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## <u>ORDER</u>

This is a review pursuant to 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security denying Plaintiff V.M.P.'s application for disability insurance benefits. The parties consented to have a United States Magistrate Judge conduct proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals. Because substantial evidence supports the ALJ's decision to discount, in part, the opinion of Dr. Linda Arnold Walker, and because any step-two error committed by the ALJ was harmless, it is **ORDERED** that the Commissioner's final decision is **AFFIRMED**.

## BACKGROUND

Plaintiff applied for Title II and Title XVI social security benefits in November 2017, alleging disability beginning that same month due to arthritis, a nerve root injury, degenerative disc disease, spinal stenosis, sciatic joint pain, and high cholesterol. (R. 14–15, 54). After Plaintiff's applications were denied initially and on reconsideration at the state-agency level of review, Plaintiff requested further review before an administrative law judge (ALJ).

The presiding ALJ held a hearing by telephone in April 2020, during which Plaintiff testified that she had difficulty walking due to pain and a weak right leg, and that she suffered from joint pain in the hands and knees. (R. 19). Plaintiff further testified that she spent most of a typical day attempting to sit in a recliner with her feet elevated to reduce feet and ankle swelling (R. 21–22), but that prolonged sitting was rendered difficult due to sciatic pain. Specifically, Plaintiff testified that "[if] I sit about 15 minutes, reclining[,] the lower part of my back will hurt." (R. 28). To support her account of pain, Plaintiff primarily cited the opinion of Dr. Linda Arnold Walker, a primary care provider who offered a medical source statement in February 2020. (R. 16, 441–46).

In May 2020, the ALJ issued an opinion finding that Plaintiff was not disabled within the meaning of the Social Security Act. In so finding, the ALJ partially discounted Dr. Walker's source statement, and instead relied on other medical evidence showing that Plaintiff could perform sedentary work involving frequent hand manipulation and occasionally use of the upper extremities for pushing and pulling. (R. 124, 130–31). The Appeals Council declined to conduct further administrative review in Plaintiff's case in December 2020 (R. 1–3), and Plaintiff now seeks judicial review from this Court. As discussed below, substantial evidence supports the ALJ's decision to discount, in part, Dr. Walker's opinion, and additionally, any step-two error committed by the ALJ was harmless. Accordingly, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL RECORD

The available medical record begins in December 2012, when Plaintiff sought care from Dr. Wayne Kelley, Jr., an orthopedic surgeon, for pain at the sacroiliac joint. Based on an examination of Plaintiff along with a review of prior x-ray studies, Dr. Kelley diagnosed Plaintiff with sacroiliitis, for which he prescribed exercise and stretching. (R. 338). Subsequently, in

October 2013, an MRI exam revealed "very mild" degenerative changes "causing some very mild central spinal canal and neural foraminal stenosis." (R 339). At a follow-up appointment in September 2013, Dr. Kelley found that Plaintiff retained full motor strength and full range of motion. (R. 333). Dr. Kelley again prescribed regular exercise and stretching, along with "anti-inflammatories as needed, but not on a regular basis." (R. 333). Subsequent records from a February 2014 appointment show similar findings. (R. 330–31).

The next available record dates from July 2014, and records Plaintiff's treatment with Dr. Faryal Baloch for persistent pain at the sacroiliac joint and for the new symptom of pain in the hands and feet. (R. 504). Plaintiff then was taking the medications Naprosyn and Lopid, and Dr. Baloch additionally prescribed Prednisone, along with a low dose of steroids and instructions to perform range of motion exercises. (R. 501–02). Dr. Baloch diagnosed Plaintiff with "pain in joint, multiple sites," and with an "[u]nspecified inflammatory polyarthropathy." (R. 500).

At an October 2014 follow-up appointment with Dr. Baloch, Plaintiff tested seronegative, meaning that blood testing was not indicative of rheumatoid arthritis. (R. 497). Nevertheless, based on Plaintiff's reports of persistent pain, swelling, and stiffness in her hands and fingers, Dr. Baloch prescribed Methotrexate and folic acid tablets. (R. 496–97). In November 2014, because Methotrexate caused Plaintiff to suffer from gastrointestinal side effects, Dr. Baloch reduced the dosage of that medication and instead prescribed hydroxychloroquine sulfate tablets. (R. 494–95). Thereafter, Plaintiff treated with Dr. Baloch at roughly three-month intervals in February and in early June of 2015. During these treatment sessions, Plaintiff reported "[right] hip pain … worse at night," for which Dr. Baloch provided cortisone injections. (R. 488–93).

In July 2015, Plaintiff treated with Dr. James Extine, D.O., at Oconee Orthopedics, for lower back pain and radiating numbness. (R. 344). Dr. Extine observed that Plaintiff had full

4

muscle strength on testing, "[d]ifficulty with toe and heel gait," and some signs of pain on flexion tests. (R. 346). In September 2015, Plaintiff treated with Dr. Joseph Brogdon, whose EMG study revealed results suggestive of a "moderate bilateral S1 nerve root injury." (R. 354). At a visit with Dr. Baloch in September 2015, Plaintiff reported suffering from "pain all over her body." (R. 486). Dr. Baloch prescribed Gabapentin and advised Plaintiff to consume calcium, to avoid excess caffeine and alcohol, and to perform range of motion exercises. (R. 487).

No treatment records are available from 2016. The next available medical records date from July 2017, recording Plaintiff's treatment at the office of Dr. Linda Arnold Walker, a primary care provider, for right knee pain stemming from a fall. (R. 368). An x-ray study revealed no abnormalities. (R. 381). Plaintiff returned to Dr. Walker's office in January 2018 for a refill of Naprosyn, whereupon Plaintiff reported symptoms of "mild to moderate" lower back pain "[r]elieved by: prescription" medication. (R. 371).

In March 2018, Plaintiff presented for a consultative physical examination performed by Dr. Alton Greene. (Ex. 6F). Dr. Greene found that Plaintiff would be able to ambulate occasionally, meaning for up to 1/3 of an 8-hour workday, and that Plaintiff could frequently stand, meaning from 1/3 to 2/3 of an 8-hour workday. (R. 396). Plaintiff demonstrated range-of-motion limitations in the back (R. 398), and Dr. Greene noted that Plaintiff would have only a limited ability to bend or stoop. (R. 396). Dr. Greene further noted that Plaintiff retained full strength in both her upper and lower extremities and had no functional limitation in the use of her upper extremities. (R. 400–01).

In May 2018, Plaintiff returned to Dr. Linda Walker for a checkup, reporting that she was "doing well and without complaints" and was "stable [and] tolerating medicines well," and that her pain was "currently well controlled w/ meds." (R. 402). Plaintiff also received neurological

care that same month from Dr. Christina Mayville, who diagnosed Plaintiff with "chronic right S1 radiculopathy." (R. 414). In July 2018, at Dr. Walker's direction, Plaintiff had a lumbar spine MRI study that revealed normal overall alignment but mild disc bulging at the L1-2 and L2-3 vertebral sites and mild stenosis at the L5-S1 site. (R. 423–24).

In August 2018, Plaintiff treated with Jonathan Mullis, PA, at OrthoGeorgia, for back pain. On examination, Mr. Mullis noted that Plaintiff had "no muscle aches or weakness and no arthralgias/joint pain, back pain, or swelling in the extremities." (R. 430) Mr. Mullis also noted that Plaintiff "has not had any formal structured therapy or epidural injections," and he prescribed as treatment "cardiovascular exercising 5 days a week," along with "stretching [the] lower back and hamstrings by bending forward and touch[ing the] toes 20 minutes …. 3 times a day." (R. 432).

In September 2018, Plaintiff followed up with Dr. Walker, who renewed Plaintiff's Gabapentin and Naprosyn prescriptions and encouraged Plaintiff to engage in stretching. (R. 475). In December 2018, and then again in January 2019, Dr. Walker noted that Plaintiff was "doing well and without complaints," that Plaintiff was "tolerating medicines well," and that Plaintiff's pain was rated at "mild to moderate" but was relieved by prescription medications. (R. 463, 468). At an April 2019 appointment, Plaintiff reported falling down steps at her house because "her left leg [gave] away." (R. 460). In June 2019, Plaintiff's complaints focused primarily on an itchy and swollen eye attributed to a broken blood vessel, for which Dr. Walker prescribed a cromolyn-sodium solution and advised the use of a cold compress. (R. 457–58).

In July 2019, Plaintiff treated with Dr. Joe Sam Robinson, Jr., a neurosurgeon. Dr. Robinson found that Plaintiff had "5/5" strength "in all 4 extremities," and that Plaintiff's "[f]ine and gross motor coordination [was] intact." (R. 435). Dr. Robinson noted that Plaintiff had "some SI joint and greater trochanter pain," as well "dysesthesias that radiate from her right hip

6

down into the right knee." (R. 435). A myelogram study that Dr. Robinson ordered showed "[n]o evidence of central canal stenosis" but showed "multilevel neuroforaminal disc bulging," with a "[m]ild broad-based disc bulge" at the L5-S1 vertebral site. (R. 436–37).

The final available medical records are from Dr. Linda Walker, Plaintiff's primary care provider. At a January 2020 follow-up appointment, Dr. Walker recommended "tai chi and [Pilates] for [range of motion] and muscle conditioning to take pressure from [the] joints." (R. 455). In February 2020, however, Dr. Walker provided a medical source statement in which she indicated that Plaintiff could only sit for one hour in total during an eight-hour workday, could only stand for three hours in total during an eight-hour workday, could only occasionally lift and carry weights of no greater than ten pounds, and would need the freedom to alternate her position at will. (R. 441–46).

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the five-step sequential evaluation procedure, the reviewing ALJ made the following findings in Plaintiff's case. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since at least at least November 14, 2017, her alleged onset date. (R. 123). At step two, the ALJ found that Plaintiff had the following severe impairments: "Seronegative polyarthritis; Degenerative disc disease (DDD); Obesity; Degenerative joint disease (DJD); and Spondylosis." (R. 123).

At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 123). Therefore, the ALJ assessed Plaintiff's RFC and found that Plaintiff could perform sedentary work with the following exceptions:

> [S]he can never crawl, or climb ladders, ropes, or scaffolds; she can occasionally
> climb ramps and stairs, balance, stoop, kneel, and crouch; she can frequently reach,

handle, finger, and feel bilaterally; occasionally push, pull, and operate foot controls bilaterally; occasionally operate a motor vehicle; avoid concentrated exposure to extreme cold, vibration, and wetness; she can have no exposure to unprotected heights or moving mechanical parts; and she requires a cane to ambulate and balance carried in her dominant hand.

(R. 124)

At step four, the ALJ determined that Plaintiff had no past relevant work. (R. 132). At step five, the ALJ found that Plaintiff could adjust to the requirements of other work, and specifically to the requirements of representative occupations such as addresser, document preparer, and callout operator. (R. 132–33). Accordingly, based on this step-five finding, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff raises two arguments in support of her request for judicial review. First, Plaintiff argues that the ALJ erred at step two by failing to find that Plaintiff's radiculopathy and nerve root injury were severe impairments. Second, Plaintiff argues that the ALJ erred by rejecting a medical source statement provided by Dr. Linda Arnold Walker, Plaintiff's primary care provider. For the reasons discussed below, neither of Plaintiff's arguments provides cause for a remand.

Regarding Plaintiff's first argument, step two of the sequential evaluation process is a threshold measure designed to screen out groundless disability applications. If "at least one severe impairment exist[s]," then the threshold inquiry is satisfied, and the ALJ proceeds to subsequent steps where the plaintiff's impairments are considered in greater depth. *Packer v. Comm'r*, 542 F. App'x 890, 892 (11th Cir. 2013). The ALJ in this case found that Plaintiff suffered from the severe impairments of "Seronegative polyarthritis; Degenerative disc disease (DDD); Obesity; Degenerative joint disease (DJD); and Spondylosis." (R. 123). These impairments are materially similar to radiculopathy and nerve root injury, and it is clear that the ALJ considered Plaintiff's

8

medical condition as a whole at subsequent steps. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). As a technical matter, though, because the ALJ found at least one impairment during the step two inquiry, any error that the ALJ made at step two of her analysis was harmless. *Packer*, 542 F. App'x at 892.

Second, Plaintiff argues that the ALJ erred by discounting a February 2020 medical source statement given by Dr. Linda Arnold Walker, (R. 441–46), Plaintiff's primary care provider. Although Dr. Walker was a treating physician, her opinion was not automatically entitled to deference or controlling weight under new agency regulations. *See Harner v. Comm'r*, 38 F.4th 892, 896–99 (11th Cir. 2022) (discussing 20 U.S.C. § 404.1520c).

Upon consideration of the factors enumerated in 20 C.F.R. § 404.1520c(c), and particularly the factors of supportability and consistency, the ALJ determined that Dr. Walker's medical source statement was "partially persuasive," (R. 131), meaning that the ALJ accepted some limitations proposed by Dr. Walker, such as the limitations that "cane use [should be] included in [Plaintiff's] residual functional capacity" and that Plaintiff should be limited "to work in the sedentary exertional range." (R. 131). The ALJ rejected, however, Dr. Walker's proposed limitations relating to Plaintiff's ability to sit and to use her upper extremities, and substantial evidence supports the ALJ's decision partially to reject Dr. Walker's opinion in this regard.

Regarding hand pain, Dr. Walker indicated that Plaintiff could only lift and carry weights of up to ten pounds and that Plaintiff's upper-extremity functionality was limited, particularly in tasks requiring reaching and pushing/pulling. (R. 441, 443). As noted by the ALJ, though, Plaintiff's treatment records contain numerous findings that Plaintiff retained "intact strength throughout all extremities." (R. 130). *See also* (R. 333, 346, 435). Similarly, the ALJ noted that imaging studies revealed few objective findings to support Plaintiff's account of subjective pain.

(R. 130). *See also* (R. 502–03). Finally, the ALJ did not err by relying on the opinion of Dr. Alton Greene, a consultative examiner who found that Plaintiff had no functional limitation in the use of her upper extremities. (R. 400–01). These findings by the ALJ are sufficient to discount Dr. Walker's proposed limitations relating to hand pain based on lack of supportability.

Similarly, regarding Plaintiff's ability to sit for prolonged periods, the ALJ observed that Dr. Walker's medical source statement is internally inconsistent in that Dr. Walker proposed both that Plaintiff could sit for two hours at one time without interruption and that Plaintiff could only sit for one hour in total during an eight-hour workday. (R. 442). The ALJ further explained that Dr. Walker's source statement is not supported her own treatment notes, or those of other physicians, which indicate that (a) Plaintiff's pain was largely controlled with medication (R. 402, 463, 468), and that (b) Plaintiff's treatment was conservative, in that numerous treating sources prescribed cardiovascular activity, stretching, and range of motion exercises. (R. 333, 338, 425, 432, 487). Indeed, Dr. Walker herself recommended, at a January 2020 appointment, that Plaintiff participate in tai chi or Pilates classes. (R. 455).

The Court's review of the Commissioner's decision is limited to a review for substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 11560 (11th Cir. 1995). In this case, substantial evidence supports the ALJ's decision to discount Dr. Walker's February 2020 medical source statement, particularly as that statement related to Plaintiff's upper extremity functionality, as well as Plaintiff's ability to sit for prolonged periods. Accordingly, because substantial evidence supports the Commissioner's decision, that decision is affirmed.

## CONCLUSION

After a careful review of the record, and for the reasons discussed herein, the Commissioner's final decision in Plaintiff's case is **AFFIRMED**.

**SO ORDERED**, this 31st day of August, 2022.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge